J-A02007-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JEFFREY DUNN, SR. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CAROLA VAN ECK | : | |
| | : | |
| Appellant | : | No. 710 WDA 2021 |

Appeal from the Decree Entered June 4, 2021
In the Court of Common Pleas of Allegheny County Family Court at
No(s):  FD 19-001936-017

BEFORE:   OLSON, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY OLSON, J.:                    **FILED: MARCH 8, 2022**

Appellant, Carola Van Eck ("Wife"), appeals from the June 4, 2021 decree in divorce that, *inter alia*, awarded Jeffrey Dunn, Sr. ("Husband") alimony *pendente lite*.  We affirm.

The trial court summarized the factual and procedural history as follows:

The relevant litigation commenced in this case in November 2019[,] when Wife filed a protection from abuse [("PFA")] petition in which she alleged that she and Husband had been discussing her leaving the marital residence when he picked up a gun, pointed it at himself, and threatened to shoot himself if she left. Wife alleged that she told Husband that she was going to call the police, at which point he left the room with the gun.  According to Wife, the police initially responded but then left, and only returned after she called them again upon learning the garage was on fire. When police arrived back to the [marital residence] they found Husband in the garage with the car running[.]  Husband required [cardiopulmonary resuscitation] and was taken to the hospital.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Wife alleged that Husband had been tracking her phone, tracking her car *via* the [global positioning] system, and had installed multiple cameras in the [marital residence]. Wife averred that Husband was much stronger than she and that she feared for her safety.

A temporary [PFA] order was granted and remained in place through several continuances. On March 11, 2020, following a final hearing, [the trial] court granted Wife a three-year final PFA order [] and evicted Husband from the [marital] residence.

During the pendency of the PFA action, Husband filed a complaint for support on December 30, 2019, and then a six-count complaint in divorce on February 10, 2020, which included a claim for alimony. On February 11, 2020, Wife filed preliminary objections [] to Husband's divorce complaint based on the parties' prenuptial agreement[. In an April 20, 2020 order, the trial] court sustained Wife's [preliminary objections] and dismissed several of Husband's divorce counts.

The support hearing on Husband's complaint was delayed until August 27, 2020, mainly due to the COVID-19 [global] pandemic. During the remote hearing, Wife argued that Husband was not entitled to support because she was a victim of his abuse, as evidenced by the three-year final PFA order[.] Following the hearing, the hearing officer [] calculated Wife's monthly net income to be $19,949.78 and Husband's [] monthly [net] income to be $0[.00]. The [hearing officer] recommended that Husband's claim for spousal support, from December 30, 2019[, through] February 10, 2020, be denied, based on Wife's entitlement defense, but that his claim for [alimony *pendente lite*] be granted and that Wife be ordered to pay Husband $6,566.79 [per] month beginning February 10, 202[0].

On [] September [17], 2020, Wife timely filed exceptions to the hearing officer's temporary order [] dated September 3, 2020[.] In her exceptions, Wife claimed the following:

> The [hearing officer] erred [] or committed an abuse of discretion by failing to make a downward deviation of [Wife's alimony *pendente lite*] obligation. Wife was the victim of documented stalking, harassment[,] and abuse by Husband. On March 11, 2020, following a lengthy hearing, the [trial] court entered an adjudicated [three]-year PFA [order] against Husband. The failure to make a downward deviation after proof of domestic violence resulting in a PFA

[order] is contrary to the facts, the law, and public policy inasmuch as it orders an abuse victim to pay money to her abuser to fund divorce litigation which she has sought as a result of his wrongful conduct. This [order to pay alimony *pendente lite*] re-victimizes [the abusee] and provides a financial windfall to the abuser.

In her brief in support of exceptions[,] Wife opined that although Husband might argue that there is no entitlement defense to [alimony *pendente lite*] like there is for spousal support, there is nothing that states an abusive spouse must receive [alimony *pendente lite*]. Wife argued that the personal injury crime exception to [alimony *pendente lite*,] set forth in 23 Pa.C.S.A. § 3702(b)[,] was "clearly designed to prevent the abhorrent possibility of a [`]physically['] abusive spouse . . . receiving [alimony *pendente lite*] from that abused spouse," and that the fact that Wife's PFA [order] was adjudicated through family court as opposed to criminal court should be of no importance.

In her brief, Wife set forth several reasons why she should not be forced to pay a "guideline" amount of [alimony *pendente lite*]. First, she received a full three-year PFA order[,] the maximum allowable by law, not just a "'cooling-off' short-term PFA [order]." Second, "Wife sustained tangible economic losses as a result of Husband's abusive conduct," which resulted in Husband being ordered to pay her approximately $7,000[.00]. The [alimony *pendente lite*] order created the possibility "that Wife will be paid back by Husband for his abusive conduct with her own money." Third, Wife argued the "catch-all" deviation set forth in Pa.R.C[iv].P. 1910.16-5(b)(9) permits adjustments to support orders to avoid creating an unjust result, which was the result of the [hearing officer's] award in this case.

By order [] dated November 13, 2020, [the trial] court denied Wife's exception regarding the [alimony *pendente lite*] issue, but granted Wife's exception regarding Husband's earning capacity. The case was remanded to the [hearing officer] to set an earning capacity for Husband and recalculate Wife's [alimony *pendente lite*] obligation. By order [] dated December 14, 2020, the [hearing officer] set Husband's earning capacity at $5,000[.00 per] month gross [income], for a monthly net income of $3,889.17, and adjusted Wife's [alimony *pendente lite*] obligation to $5,008.91 [per] month. For the next six months, the parties continued to engage in litigation for both support and divorce

matters, until the decree in divorce was ultimately [entered] on June [4], 2021[.]

Trial Court Opinion, 8/23/21, at 2-6 (extraneous capitalization and footnote omitted). This appeal followed.[1]

Wife raises the following issues for our review:

[1.] Whether the trial court erred as a matter of law and abused its discretion by dismissing Wife's exception that the hearing officer should have deviated in determining Wife's alimony *pendente lite* obligation to Husband given the abuse inflicted by Husband against Wife which resulted in a final three[-]year [PFA] order?

[2.] Whether the trial court erred and committed an abuse of discretion by affirming an alimony *pendente lite* award paid by an abused spouse to her abuser, thus as a matter of public policy, failing to find that individuals who are adjudicated as abusers should not receive alimony *pendente lite* from their victims, as this perpetuates the abuse and frustrates the purpose and intent of the [PFA] statute?

Wife's Brief at 9 (extraneous capitalization omitted).

Wife's issues, *in toto*, challenge the trial court's order awarding Husband alimony *pendente lite* for which our standard of review is well-settled.

We review [alimony *pendente lite*] awards under an abuse of discretion standard. **Haentjens v. Haentjens**, 860 A.2d 1056, 1062 (Pa. Super. 2004). [An order awarding alimony *pendente lite*] is "an order for temporary support granted to a spouse during the pendency of a divorce or annulment proceeding." 23 Pa.C.S.A. § 3103. [Alimony *pendente lite*] "is designed to help the dependent spouse maintain the standard of living enjoyed while living with the independent spouse." **Litmans v. Litmans**, [] 673 A.2d 382, 389 ([Pa. Super.] 1996). Also, and perhaps more importantly, "[alimony *pendente lite*] is based on the need

_____

[1] Both Wife and the trial court complied with Pa.R.A.P. 1925.

of one party to have equal financial resources to pursue a divorce proceeding when, in theory, the other party has major assets which are the financial sinews of domestic warfare." *Id.* at 388. [Alimony *pendente lite*] is thus not dependent on the status of the party as being a spouse or being remarried but is based, rather, on the state of the litigation.

*Carney v. Carney*, 167 A.3d 127, 134 (Pa. Super. 2017).

Section 3702 of the Pennsylvania Divorce Code states as follows:

**§ 3702.  Alimony *pendente lite*, counsel fees and expenses**

**(a) General rule.**--In proper cases, upon petition, the [trial] court may allow a spouse reasonable alimony *pendente lite*, spousal support[,] and reasonable counsel fees and expenses. Reasonable counsel fees and expenses may be allowed *pendente lite*, and the [trial] court shall also have authority to direct that adequate health and hospitalization insurance coverage be maintained for the dependent spouse *pendente lite*.

**(b) Exception.**--Except where the [trial] court finds that an order for alimony *pendente lite* or spousal support is necessary to prevent manifest injustice, a party who has been convicted of committing a personal injury crime against the other party shall not be entitled to spousal support or alimony *pendente lite*.  Any amount paid by the injured party after the commission of the offense but before the conviction of the other party shall be recoverable by the injured party upon petition.

23 Pa.C.S.A. § 3702.  Section 11.103 of the Pennsylvania Crime Victims Act

defines "personal injury crime" as

[a]n act, attempt[,] or threat to commit an act which would constitute a misdemeanor or felony under the following: 18 Pa.C.S.[A.] Ch. 25 (relating to criminal homicide)[;] 18 Pa.C.S.[A.] Ch. 27 (relating to assault)[;] 18 Pa.C.S.[A.] Ch. 29 (relating to kidnapping)[;] 18 Pa.C.S.[A.] Ch. 31 (relating to sexual offenses)[;] 18 Pa.C.S.[A.] § 3301 (relating to arson and related offenses)[;] 18 Pa.C.S.[A.] Ch. 37 (relating to robbery)[;] 18 Pa.C.S.[A] Ch. 49 Subch. B (relating to victim and witness intimidation)[;] 30 Pa.C.S.[A.] § 5502.1 (relating to homicide by watercraft while operating under influence)[; t]he former 75

Pa.C.S.[A.] § 3731 (relating to driving under influence of alcohol or controlled substance) in cases involving bodily injury[;] 75 Pa.C.S.[A.] § 3732 (relating to homicide by vehicle)[;] 75 Pa.C.S.[A.] § 3735 (relating to homicide by vehicle while driving under influence)[;] 75 Pa.C.S.[A.] § 3735.1 (relating to aggravated assault by vehicle while driving under the influence)[;] 75 Pa.C.S.[A.] § 3742 (relating to accidents involving death or personal injury)[; and] 75 Pa.C.S.[A.] Ch. 38 (relating to driving after imbibing alcohol or utilizing drugs) in cases involving bodily injury.

18 P.S. § 11.103 (formatting modified). "The term includes **violations** of any protective order issued as a result of an act related to domestic violence." *Id.* (emphasis added). Of note, is that while a personal injury crime includes a violation of a PFA order, it does not include the issuance of a PFA order.[2]

_____

[2] The inclusion of a violation of a protective order in the "personal injury crime" definition logically flows from the fact that a protective order by its mere name indicates that it is issued for the benefit of the victim and is designed to protect a victim from, *inter alia*, future physical and verbal abuse from the abuser. *Commonwealth v. Felder*, 176 A.3d 331, 334 (Pa. Super. 2017) (stating that "the purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse" (brackets, original quotation marks and citation omitted)). To receive a protective order, the victim must prove the allegations of the petition seeking a protective order by a preponderance of the evidence. 23 Pa.C.S.A. § 6107(a). The abuser is not guilty of a crime simply upon the issuance of a protective order (although the abuser may be found guilty of crimes which led to the issuance of the protective order). Rather, an abuser may be found guilty of a crime if he, or she, violates the protective order. In order words, the protective order makes it a crime for the abuser to abuse the victim physically or verbally in the future because these subsequent actions of abuse constitute a violation of a court-directed protective order. *See*, *generally*, *Felder*, 176 A.3d at 334. Specifically, "an indirect criminal contempt charge is designed to seek punishment for [a] violation of the protective order." To convict the abuser of an indirect criminal contempt charge, the Commonwealth must prove beyond a reasonable doubt that "1) the order was sufficiently definite, clear, and specific to the contemnor as to

In awarding alimony *pendente lite*, courts are mindful that

> [t]he purpose of alimony *pendente lite* is to provide the dependent spouse equal standing during the course of the divorce proceeding. Alimony *pendente lite* focuses on the ability of the individual who receives the alimony *pendente lite* during the course of the litigation to defend [herself, or himself], and **the only issue is whether the amount is reasonable for the purpose, which turns on the economic resources available to the spouse**.

***Cook v. Cook***, 186 A.3d 1015, 1022-1023 (Pa. Super. 2018) (citation, original brackets, and ellipsis omitted; emphasis added). The Pennsylvania Rules of Civil Procedure governing actions for support, including alimony *pendente lite*, are set forth at Rules 1910.1 through 1910.50. ***See*** Pa.R.Civ.P. 1910.1 - 1910.50. Rules 1910.16-1 through 1910.16-7 set forth the guidelines for awarding, *inter alia*, alimony *pendente lite*. ***See***, ***generally***, Pa.R.Civ.P. 1910.16-1 through 1910.16-7. In general, the award of alimony *pendente lite* is based upon the parties' economic circumstances and focuses on each party's monthly gross income less certain deductions, as enumerated in Rule 1910.16-2(c). ***See*** Pa.R.Civ.P. 1910.16-2 (stating that, the "alimony *pendente lite* obligation is based on the parties' monthly net income"); ***see also*** Pa.R.Civ.P. 1910.16-2(c) (listing certain deductions used to calculate monthly net income, including deductions for, *inter alia*, federal, state, and

---

leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent." ***Id.*** at 333-334 (citation omitted).

local income taxes). Rule 1910.16-4(a)(1)[3] sets forth a formula used to calculate the guideline amount of the obligor's total monthly support obligation. *See* Pa.R.Civ.P. 1910.16-4(a)(1).

Although the calculation of potential support under Rule 1910.16-4(a)(1) is a straight-forward calculation, the trial court has discretion to deviate from this guideline-calculation pursuant to Rule 1910.16-5(a)(1). *See* Pa.R.Civ.P. 1910.16-5(a)(1) (stating that, "[t]he trier-of-fact may deviate from the basic . . . alimony *pendente lite* obligation"); *see also* Pa.R.Civ.P. 1910.16-1(d) (stating that, "[i]f the trier-of-fact determines that a party has a duty to pay support, there is a rebuttable presumption that the guideline-calculated support obligation is the correct support obligation"). In deciding whether to deviate from the guideline-calculated alimony *pendente lite* obligation, the trier-of-fact may consider the following factors:

(1) unusual needs and unusual fixed obligations;

(2) a party's other support obligations;

(3) other household income;

(4) the child's age;

(5) the parties' relative assets and liabilities;

---

[3] The formula set forth in Rule 1910.16-4(a)(1) is appliable in the case *sub judice* because the order awarding alimony *pendente lite* was entered after January 1, 2019. *See* Pa.R.Civ.P. 1910.16-4(a)(1) (stating that, the formula applies to an award for support entered on or after January 1, 2019). By comparison, the formula set forth in Rule 1910.16-4(a)(2) would be appliable to awards for support entered before January 1, 2019. *See* Pa.R.Civ.P. 1910.16-4(a)(2).

(6) medical expenses not covered by insurance;

(7) the parties' and the child's standard of living;

(8) in a spousal support or alimony *pendente lite* case, the duration of the marriage from the date of marriage to the date of final separation; and

(9) other relevant and appropriate factors, including the child's best interest.

Pa.R.Civ.P. 1910.16-5(b)(1-9).

Here, Wife's argument turns on two alternate claims. The first asserts that the trial court erred in awarding Husband alimony *pendente lite* because "[i]t simply cannot be the case that" an attempt to cause personal injury would preclude an award of alimony *pendente lite* pursuant to 23 Pa.C.S.A. § 3103, while an abuser can receive an award of alimony *pendente lite* despite the issuance of a protective order. Wife's Brief at 29. Alternatively, if alimony *pendente lite* is not precluded by Section 3103, Wife contends, the trial court erred by failing to deviate downward from the guideline-calculated alimony *pendente lite* obligation based upon consideration of "other relevant and appropriate factors," pursuant to Rule 1910.16-5(b)(9). *Id.* at 18-25. Wife asserts that Husband's abusive behavior and the issuance of a final, three-year PFA order in favor of Wife are relevant and appropriate factors that necessitate a downward deviation of her alimony *pendente lite* obligation. *Id.* at 24.

In awarding alimony *pendente lite*, the trial court explained,

[the trial] court was unable to find any cases interpreting the meaning of the exception set forth in 23 Pa.C.S.A. § 3702(b), and Wife cited to none in her brief [in support of her exceptions to the

hearing officer's September 3, 2020 support order]. However, from the plain language of the exception, [the trial] court determined that [the issuance of] a PFA order did not amount to a "personal injury crime." Husband was not "convicted" of any "crime," which obviously would have had to occur in a criminal proceeding with a different burden of proof than that required in a PFA proceeding in family court. Although Wife claimed in her brief that she was not asking [the trial] court to create new law, [the trial] court was of the opinion that to put a PFA order on the same level as the conviction of a personal injury crime would do just that, and would be an inappropriate expansion of the application of the exception beyond the legislative intent.

Second, without the clear application of the personal injury crime exception to the case at hand, the [hearing officer] was required to exercise her discretion in applying the [] deviation [factor] set forth in Pa.R.C[iv].P. 1910.16-5(b)(9). [The trial] court determined that the [hearing officer's] refusal to apply [this] deviation [factor] was not an abuse of discretion because to do so would have thwarted the purpose of [alimony *pendente lite*]. As stated above, [alimony *pendente lite*] focuses on the economic resources available to the parties, the ability of the recipient to engage in litigation, and to maintain his[, or her,] standard of living. In fashioning an award of [alimony *pendente lite*], the [trial] court should consider the ability of the obligor to pay, any separate estate or income of the obligee, as well as the character, situation, and surroundings of the parties.

. . .

In affirming the [hearing officer's] recommendation, [the trial] court considered the fact that Husband was not employed at the time of the hearing, had not been employed outside the home since 2016, and had no separate estate upon which to [rely]. And[,] although [the trial] court [] awarded Wife with a PFA order, Husband's conduct upon which it was based was an isolated event, was non-violent in nature, and caused Wife no physical harm. That is not to say that the PFA order is of no importance. The PFA order is but one of the factors to consider in making an award of [alimony *pendente lite*]; it is not the only factor to consider. And in this case, after analyzing, all of the factors, [the trial] court could not find that the [hearing officer] abused her discretion in awarding [alimony *pendente lite*] to Husband.

Trial Court Opinion, 8/23/21, at 9, 11 (extraneous capitalization omitted).

Upon our review of the record, we concur with the trial court that a plain-reading of Section 3702, in conjunction with the definition of a "personal injury crime," does not exclude Husband from being considered for an award of alimony *pendente lite* solely because Wife obtained a final PFA order against him. Consequently, we find no error or abuse of discretion in the trial court's order awarding Husband alimony *pendente lite* based upon the argument that such an award is prohibited by Section 3702.

Wife does not argue that her guideline-calculated alimony *pendente lite* obligation was incorrect but, rather, challenges the trial court's failure to deviate downward based upon the issuance of a final PFA order in her favor, and against Husband, pursuant to the deviation factor enumerated at Rule 1910.16-5(b)(9). We are mindful that the objective of alimony *pendente lite* is grounded in the economics of the two parties and an award of alimony *pendente lite* serves to equalize each party's ability to participate effectively in a divorce proceeding. As the guidelines used to calculate a potential award of alimony *pendente lite* are based upon the parties' economic circumstances and available resources, we find the factors the trial court may consider when deviating from the guidelines to be based on economic considerations because, to hold otherwise, would thwart the purpose of alimony *pendente lite* in balancing the parties' financial resources in a divorce proceeding. We are unpersuaded by the case law relied on by Wife to suggest that the deviation factor enumerated at Rule 1910.16-5(b)(9) encompasses the

- 11 -

consideration of a PFA order, an order which is not based upon the economics of the parties but rather their behaviors.[4]  Moreover, we have found no case law, on point, to support Wife's argument.  Consequently, we discern no misapplication of law or other abuse of discretion in the trial court's decision to award alimony *pendente lite* in accordance with the guidelines and without deviation.[5]

Decree affirmed.

Judge Pellegrini joins.

Judge Murray files a Dissenting Memorandum.

_____

[4] In support of her argument, Wife relies on **Humphreys v. DeRoss**, 790 A.2d 281 (Pa. 2002) for the position that our Supreme Court used the Rule 1910.16-5(b)(9) factor to adjust a support award as the result of an inheritance received by one of the parties.  Wife also cites **L.M.L. v. W.K.L.**, 203 A.2d 319 (Pa. Super. Filed December 14, 2018) (unpublished memorandum) in which this Court, Wife asserts, "affirmed the [Rule 1910.16-5(b)(9) factor] to reduce support orders in a case where mother's income was greater than father's income; father's expenses for the children increased with the custody schedule; and, in consideration of the best interest of the children."  Wife's Brief at 24.  We find both cases unpersuasive because they relied upon consideration of economic factors to justify a deviation.

[5] Moreover, although we do not find support for consideration of a PFA order as a ground for deviating from a guideline-calculated alimony *pendente lite* obligation, the trial court, nonetheless, considered the PFA order, in its discretion, as a factor under Rule 1910.16-5(b)(9), and found that it did not warrant a deviation.  **See** Trial Court Opinion, 8/23/21, at 11.  In so finding, the trial court focused on the purpose of alimony *pendente lite* in balancing the economic resources available to the parties in order that they may engage as equals in the divorce proceedings while still maintaining their standards of living.  **Id.** at 9.  We do not find the trial court's consideration of the PFA order, in the case *sub judice*, to be an abuse of discretion.

- 12 -

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date:  3/8/2022