J-S20006-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MELISSA MACIK | : | |
| | : | |
| Appellant | : | No. 1075 WDA 2021 |

Appeal from the Judgment of Sentence Entered July 30, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-MD-0000257-2021

BEFORE: NICHOLS, J., MURRAY, J., and KING, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED: AUGUST 2, 2022**

Appellant Melissa Macik appeals from the judgment of sentence imposed after she was found in indirect criminal contempt[1] (ICC) of an order entered pursuant to the Protection from Abuse (PFA) Act.[2]  Appellant contends that the Commonwealth failed to present sufficient evidence to prove intent.  We affirm.

The trial court summarized the underlying facts of this matter as follows:

On October 22, 2020, George Stevens [(Complainant)] called Pittsburg Police to report that his ex-girlfriend, [Appellant], had violated an active [PFA] order.[3]  [Complainant] informed police

---

[1] 23 Pa.C.S. § 6114.

[2] 23 Pa.C.S. §§ 6101-6122.

[3] The record reflects that Appellant consented to the entry of the three-year PFA order in April of 2019.  The PFA order contained a no-contact provision

that he was on his way to the Circle K [convenience store] located on Brighton Road when he passed [Appellant], who was traveling in the opposite direction. Upon seeing [Complainant], [Appellant] executed a U-turn on Brighton Road and began traveling towards [Complainant]. [Complainant] continued to the Circle K and went inside the store to make a purchase, after which he returned to his vehicle and began to exit the parking lot. As [Complainant] was waiting to pull onto Brighton Road, [Appellant] pulled up to [Complainant's] vehicle and began yelling at him, demanding that he pull over and shouting, "I'm going to have your f*****g a** killed." Startled by the encounter, [Complainant] quickly exited the parking lot and merged onto Brighton Road, at which time he accelerated at a high rate of speed in order to evade [Appellant]. [Complainant] eventually made it to his nearby business and called 911.

Trial Ct. Op., 12/9/21, at 1 (formatting altered).

Following this incident, Appellant was charged with two counts[4] of indirect criminal contempt. At trial, Complainant testified: "I ran into [Appellant] on my way [to Circle K] and she turned around and followed me there." N.T., 5/21/21, at 5-6. "I'm backing out of the parking lot and she comes flying in the parking lot and blocks me from backing up any further. I look in the mirror. I realize it's her. And she is telling me 'pull over, I want to talk to you.'" *Id.* She "got belligerent, M-F-ing me, threatening me, yelling all kinds of obscenities, and she chased me out of the parking lot." *Id.*

_____

stating that "[Appellant] shall not contact [Complainant], or any other person protected under this order, either directly or indirectly, by telephone or by any other means, including through third persons." PFA Order, 4/17/19 at ¶ 4.

[4] Appellant was charged with two separate ICC violations, one for the incident at Circle K and another based on a letter she allegedly sent to Complainant in January of 2021.

Another witness, Bryan Sample, testified as follows: "[m]e and my friend were standing there talking, and we heard all of the commotion, the yelling, and when we turned to look, [Complainant] was tearing off down Brighton [R]oad, and [Appellant] was following behind him in her gray Chrysler." *Id* at 23.

Additionally, Circle K employee Casey Whitaker testified that she witnessed

> one car was pulling out of the parking lot and the other pulled in sideways, blocking the exit. And then I heard them yelling back and forth a little bit, until the car that was leaving[, Complainant's,] backed up and went out the other exit. And the second car followed them down the street, speeding down the street.

*Id.* at 30.

Appellant also testified on her own behalf. Specifically, she stated that after she saw Complainant in his car in the Circle K parking lot, he began screaming. *Id.* at 35. However, she stated that because Complainant's window was up, she did not know what he said. *Id.* at 36. On cross-examination, Appellant again stated that she did not say anything to Complainant during the alleged confrontation. *Id.* at 42.

At the conclusion of the hearing, the trial court found that Ms. Whitaker gave credible testimony that there was shouting coming from the parties, and this testimony directly contradicted Appellant's testimony. *Id.* at 49. Therefore, the trial court found Appellant guilty of one count of ICC in relation

to the October 2020 encounter with Complainant.[5]  On July 30, 2021, the trial court sentenced Appellant to a term of six months' probation.  Appellant filed a timely post-sentence motion challenging the weight of the evidence, which the trial court later denied.

On September 8, 2021, Appellant filed a timely notice of appeal.  Both the trial court and Appellant complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following issue:

> Whether [Appellant's] conviction for [ICC] can be sustained where the Commonwealth failed to prove, beyond a reasonable doubt, that her contact with [Complainant] was undertaken with wrongful intent?

Appellant's Brief at 4.

Appellant argues that there was insufficient evidence to prove that she acted with wrongful intent.  Appellant's Brief at 16.  Although she acknowledges that the PFA order contained a no-contact provision, Appellant argues that the Commonwealth did not specify what types of conduct or contact were prohibited.  *Id.* at 20.  In support, she claims that the Commonwealth failed to "introduce the actual PFA order into evidence," and did not "explain the sum and substance of the pivotal no contact provision," so "it was entirely unclear whether all contact [with Complainant] was prohibited, or only certain types (*i.e.*, only non-violent)."  *Id.* at 20.

---

[5] The trial court found Appellant not guilty on the second charge of ICC involving the letter that Appellant allegedly mailed to Complainant in January of 2021.

Appellant also argues the Commonwealth failed to introduce evidence establishing that she recognized Complainant, followed him to the parking lot, or berated him. *Id.* at 18. Instead, she contends that the encounter "occurred by sheer happenstance" and notes that Complainant "admitted that he initiated the rude and vulgar language." *Id.* at 20-21. Finally, to the extent the trial court quoted Appellant as stating, "I'm going to have your f*****g a** killed," she claims that the court's finding is unsupported in the trial transcript. *Id.* at 17. For these reasons, Appellant claims that the evidence was insufficient to sustain her conviction for ICC.

In reviewing Appellant's claim, we are guided by the following principles:

We review a contempt conviction for an abuse of discretion. We rely on the discretion of the trial court judge and are confined to a determination of whether the facts support the trial court's decision. In reviewing whether the evidence was sufficient to support the conviction, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. Finally, the trier of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

This Court has repeatedly stated that "[t]he purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order. A charge of indirect criminal contempt consists of a claim that a violation of an order occurred outside the presence of the court.

In order to establish indirect criminal contempt, the Commonwealth must prove: 1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent.

***Commonwealth v. Felder***, 176 A.3d 331, 333-34 (Pa. Super. 2017) (citations omitted and some formatting altered).

This Court has explained that "[i]n contempt matters, wrongful intent can be imputed by virtue of the substantial certainty that [one's actions would place one] in contact with [PFA petitioner] in violation of the PFA Order." ***Commonwealth v. Wilson***, 227 A.3d 928, 939 (Pa. Super. 2020) (citations and quotation marks omitted); ***see also Commonwealth v. Brumbaugh***, 932 A.2d 108, 111 (Pa. Super. 2007) (concluding that the defendant willfully violated a PFA order by accepting the victim's invitation to attend a party).

Here, in its Rule 1925(a) opinion, the trial court addressed Appellant's claim as follows:

In the instant matter, the Commonwealth proved, to the court's satisfaction, that [Appellant] violated the [PFA] order when, seeing [Complainant's] vehicle, [Appellant] executed a U-turn and followed him to the Circle K. [Appellant] then waited for [Complainant] to enter the store, complete his purchase, and return to his vehicle, at which point she confronted and threatened him. As such, the Commonwealth presented sufficient evidence establishing that [Appellant] acted with wrongful intent as necessary to sustain its burden of proof for ICC.

Trial Ct. Op., 12/9/21 at 5 (formatting altered).

Following our review of the record, we discern no abuse of discretion by the trial court. ***See Felder***, 176 A.3d at 333. At trial, the Commonwealth

presented testimony from Complainant and two other witnesses who stated that Appellant followed Complainant, blocked his exit from the store's parking lot, and then berated him with threatening language. **See** Appellee's Brief at 11-13. Although Appellant claims that the encounter was "sheer happenstance," her claim is not supported by the record, and the trial court did not find her testimony credible. **See Felder**, 176 A.3d at 334 (reiterating that "the trier of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence" (citation omitted)).

Additionally, the record reflects that Appellant consented to the entry of the three-year PFA order and was aware of the no-contact provision, as evidenced by both her signature on the PFA order and her testimony at trial.[6] **See** PFA Order, 4/17/19, at 4; **see also** N.T., 5/21/21, at 44. Because Appellant was aware of the no-contact provision, but nonetheless followed Complainant into the Circle-K parking lot and confronted him, there was a

---

[6] Appellant is correct that a copy of the PFA order was not admitted into evidence at trial. However, it is clear from the record that Appellant was aware of both the PFA order and the no-contact provision. Therefore, Appellant cannot now claim that she was unaware that her conduct would violate the PFA order. **See, e.g., Rivera v. Gutierrez**, 1085 EDA 2021, 2022 WL 557720, at *2 (Pa. Super. filed Feb 24, 2022) (unpublished mem.) (explaining that because the appellant stipulated to the terms of the PFA order, he could not claim that "the order was not sufficiently definite, clear, and specific simply because it was not introduced into evidence"). Therefore, under the circumstances of this case, we conclude that Appellant is not entitled to relief. **See generally** Pa.R.A.P. 126(b) (noting that unpublished memorandum decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

"substantial certainty that [Appellant's actions would place Appellant's] in contact with [Complainant] in violation of the PFA Order." *See Wilson*, 227 A.3d at 939. Therefore, there was sufficient evidence to establish that Appellant acted with wrongful intent.

Finally, with respect to the verbal exchange between Appellant and Complainant, Appellant is correct that there was no testimony from the hearing establishing that she told Complainant that she was going to have his "f*****g a** killed." Trial Ct. Op., 12/9/21, at 1. However, although it is true that the trial transcript does not contain that exact phrase,[7] the record supports the trial court's conclusion that Appellant approached Complainant and berated him, which was a violation of the no-contact provision of the PFA order. *See* PFA Order, 4/17/19 at ¶4 (providing that "[Appellant] shall not contact [Complainant], or any other person protected under this order, either directly or indirectly, by telephone or by any other means, including through third persons"). Further, to the extent Appellant claims that Complainant was the first one to use profanities, that does not absolve her of willfully violating the PFA order. *See Brumbaugh*, 932 A.2d at 111 (finding that the defendant violated the PFA order by attending a party with the victim, even though the victim was the one who initiated the contact).

---

[7] The notes of testimony do not reflect that Appellant uttered the phrase "I'm going to have your f*****g a** killed." Rather, that language was a quote from a police officer's statement in the complaint accusing Appellant of violating the PFA order. The record does not reflect the date on which this complaint was filed. Nevertheless, as discussed above, the exact language is immaterial as Appellant was ordered to have "no contact" with Complainant.

In sum, we agree with the trial court that the evidence was sufficient to prove that Appellant acted with wrongful intent when she spotted Complainant driving his car in the opposite direction, made a U-turn to follow him to a Circle K store, blocked Complainant from leaving the store, and shouted at him. Appellant violated the terms of the PFA order by committing these actions. *See* PFA Order, 4/17/19; *see also Felder*, 176 A.3d at 333-34.  Therefore, Appellant is not entitled to relief.  For these reasons, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  8/2/2022