J-S41023-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LAMAR BROCK | : | |
| | : | |
| Appellant | : | No. 436 MDA 2022 |

Appeal from the Judgment of Sentence Entered February 3, 2022
In the Court of Common Pleas of Dauphin County
Criminal Division at No. 2022-00511

BEFORE:   LAZARUS, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:          **FILED: DECEMBER 29, 2022**

Lamar Brock (Appellant) appeals from the judgment of sentence imposed after the trial court found him guilty of indirect criminal contempt (ICC) for twice violating a temporary protection from abuse (PFA) order.[1]  We affirm.

Prior to the entry of the PFA order, Appellant lived with Erika Burke and her children in an apartment located at 73 S. Wells Street in Wilkes-Barre.[2]  Ms. Burke obtained the temporary PFA order against Appellant on January 21, 2022.  The order stated:

---

[*] Former Justice specially assigned to the Superior Court.

[1] The Protection from Abuse Act is codified at 23 Pa.C.S.A. §§ 6101-6122. Pursuant to § 6114(a), a "court may hold the defendant in indirect criminal contempt and punish the defendant in accordance with law."

[2] Ms. Burke testified that she and Appellant were both on the lease.  N.T., 2/3/22, at 16.

1. [Appellant] shall not abuse, harass, stalk, threaten, or attempt to threaten to use physical force against [Ms. Burke and her children] in any place where they might be found.

2. [**Appellant**] **shall be evicted and excluded from the residence at 73 South Wells St. Wilkes-Barre, PA 18702 or any other permanent or temporary residence where [Ms. Burke] or any other person protected under this order may live**. [**Ms. Burke] is granted exclusive possession of the residence**. [Appellant] shall have no right or privilege to enter or be present on the premises of Plaintiff or any other person protected under this order.

Temporary Order, 1/21/22, at 1 (emphasis added). The order also specified Appellant was "prohibited from having ANY CONTACT" with Ms. Burke and her children. *Id.* (capitalization in original).

With respect to service:

The Temporary PFA was served upon [Appellant] on January 24, 2022, at 8:40 a.m. at the Luzerne County Correctional Facility, by Deputy David Capobianco of the Luzerne County Sheriff's Department. The Affidavit of Service is found in the PFAD directory and is attached [to the trial court's opinion]. Further, at the ICC hearing, the deputy sheriff testified that the Temporary PFA was served on January 24, 2022.

Trial Court Opinion, 5/11/22, at 2 (citing N.T., 2/3/22, at 21).

Shortly after he was released from the Luzerne County Correctional Facility, police arrested Appellant and charged him with two counts of ICC for violating the PFA order on January 28, 2022, and January 29, 2022. The trial court convened a contempt hearing on February 3, 2022.

Wilkes-Barre City Police Officer Gregory Perez testified to being dispatched to 73 S. Wells Street on January 28, 2022, for an alleged PFA violation. N.T., 2/3/22, at 5. Ms. Burke was at the apartment when Officer Perez arrived; she told him that she called police after she discovered Appellant at the apartment. *Id.* at 6. Officer Perez confirmed that the PFA order "evicted [Appellant] from the premises." *Id.* Although Appellant was no longer at the apartment, Officer Perez testified "it appeared that someone [had been] in the apartment." *Id.*

Wilkes-Barre City Police Officer Raul Ortiz testified to being dispatched to the apartment the following day, January 29, 2022, for a second alleged PFA violation. *Id.* at 9. Officer Ortiz stated that when he arrived, "Ms. Burke was outside [and] allowed us into the residence. … [Appellant] was located coming out of a bedroom at which point he was placed under arrest without incident regarding the PFA violation." *Id.* Appellant told Officer Ortiz that the apartment lease was in his name. *Id.* at 9-10. Officer Ortiz opined that Appellant's name on the lease was irrelevant "due to the PFA stating that [Appellant] was, in fact, evicted from the residence." *Id.* at 12.

Ms. Burke testified Appellant "was not supposed to be at the apartment. He's evicted." *Id.* at 13. She stated that on January 28, 2022, she

> came to the apartment just to get a few things because I haven't been staying there because I didn't feel safe with my children. And when I came there, [Appellant] was there in the room. So then I left, and I called the police.

*Id.* Ms. Burke had seen Appellant in the bedroom, but "he didn't see" Ms. Burke. *Id.* at 14. She stated that she "closed the door and I left. And I went outside and called the police." *Id.*

Ms. Burke testified that the following day, January 29, 2022, she

> went to [the apartment] to check the mail. And when I came, and [Appellant] was there. And he was sitting there with food and … I left because he told me that I wasn't supposed to be there. And I called the police and they came. I met them outside and I let them in. … [H]e was still there.

*Id.* at 14.

Ms. Burke explained she was no longer staying at the apartment, but her "things were still there. [A]fter the incident that caused this whole thing, I didn't feel comfortable staying there. But I still ha[d] my stuff there." *Id.* at 15.

Appellant testified in his defense. Regarding January 28, 2022, Appellant said he "came back to the apartment [and] the landlord told me Ms. Burke had recently moved out." *Id.* at 18. Appellant claimed, "Ms. Burke cannot live there anymore. That's why it was okay for me to establish my living there." *Id.* Appellant stated he "had no idea I was not supposed to be there. My landlord … let me know it was okay for me to be there. This is why I was there." *Id.*

As to January 29, 2022, Appellant testified "the police just walked in the house and arrested me. … I'm thinking [Ms. Burke] has nothing in the house, no type of nothing in the house." *Id.* Appellant asserted:

[Ms. Burke] moved out of that place. So the PFA should be against where she lives at now and not at the house where I resided simply because my landlord boot[ed] her off the lease for abandonment. … I had no idea that I wasn't supposed to be there.

*Id.* at 19.

The trial court subsequently convicted Appellant of two counts of ICC and sentenced him to an aggregate 2 - 6 months of incarceration, followed by 6 months of probation. Appellant timely appealed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents two issues for review:

I. Whether the Commonwealth presented sufficient evidence to find the Appellant guilty of two ICC violations and whether Appellant was aware of the terms and conditions of the PFA?

II. Whether the trial court abused its discretion in position of sentencing?

Appellant's Brief at 1.

We review Appellant's contempt conviction for an abuse of discretion. ***Commonwealth v. Felder***, 176 A.3d 331, 333 (Pa. Super. 2017) (citation omitted). We rely on the discretion of the trial court judge and are confined to a determination of whether the facts support the trial court's decision. ***Id.***

When a defendant violates a PFA order, the trial court has the authority to hold the defendant in indirect criminal contempt. 23 Pa.C.S.A. § 6114. To convict a defendant of indirect criminal contempt for violating a PFA order, "the Commonwealth must demonstrate beyond a reasonable doubt that, at the time of the violation, the defendant had actual knowledge of

the PFA order, regardless of how the defendant gained this knowledge."

***Commonwealth v. Stevenson***, 283 A.3d 196, 199 (Pa. 2022).

In his first issue, Appellant argues the evidence was insufficient to support his convictions.

> In reviewing whether the evidence was sufficient to support the conviction, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

> … A charge of indirect criminal contempt consists of a claim that a violation of an order occurred outside the presence of the court.

> In order to establish indirect criminal contempt, the Commonwealth must prove: 1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent.

***Felder***, 176 A.3d at 333-34 (citations and quotation marks omitted).

Appellant concedes the temporary PFA order "was issued and he had notice of the Order." Appellant's Brief at 6. He challenges the sufficiency of the evidence based on "representations by his landlord that the victim had vacated the residence." ***Id.*** at 7. Appellant claims he "did not act with 'a wrongful intent'; rather his intent was to return to a residence where he believed the victim had vacated." ***Id.*** Appellant asserts "his acts were not

- 6 -

volitional, in that he believed he had an absolute right to return to his apartment given the fact that the victim had vacated." ***Id.*** He references the victim's testimony confirming that she had left the couple's apartment. ***Id.*** He also states he "had no idea that he was not allowed to be there given the fact that [the victim] had vacated, and he believed any Protection from Abuse Order was for where the victim currently resided, not where she formerly resided." ***Id.*** (citing N.T., 2/3/22, at 18-19).

The trial court found Appellant "not credible." Trial Court Opinion, 5/11/22, at 6. The court explained to Appellant:

> Based upon the credible testimony of record, [Appellant], you are found guilty of violating the PFA, Violation No. 1 and Violation No. 2.
>
> When a PFA order is signed by a judge and is served upon a [defendant and] says you are evicted and excluded from this residence, you cannot go there. By your own testimony of record, you disregarded the court order because you believed [Ms. Burke] had moved out. That is a blatant admission and a violation of the order.
>
> You can't supersede what a judge orders because you think [Ms. Burke] moved out. That's a violation of the order. I find that [Appellant] violated the first day[, January 28, 2022,] when [Ms. Burke] came in and found and saw you. I find her testimony credible. And when she came back [the next day, January 29, 2022,] – even if she' moving out, it is irrelevant. A judge ordered that you cannot be at that residence. And your landlord doesn't change a court order. A court order is valid and legal until it is modified or no longer exists. And [Appellant] went back the next day.

N.T., 2/3/22, at 21.

The record supports the trial court's findings. Therefore, the evidence was sufficient for the court to convict Appellant of two counts of ICC. *Felder*, 176 A.3d at 334 (Commonwealth proves indirect criminal contempt where PFA order was "sufficiently definite, clear, and specific" as to prohibited conduct; the contemnor had notice; the violation was volitional; and contemnor acted with wrongful intent.). Appellant's first issue does not merit relief.

In his second issue, Appellant "challeng[es] the discretionary aspects of his sentence." Appellant's Brief at 9. Appellant concedes the trial court "had the authority to sentence him to his present term of incarceration," but claims "the circumstances of this matter clearly did not require incarceration; rather, the act should have been considered merely a diminimus [*sic*] violation of the PFA." *Id.* at 10. Appellant reiterates that "he clearly had no intention of violating the PFA and as a matter of fact, did not believe he violated the PFA by returning to his residence when he knew the victim had vacated." *Id.* He claims he "was clearly sentenced without consideration of 42 Pa.C.S.A. § 9781(c)," pertaining to "Appellate review of sentence." *Id.*

"The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265 (Pa. Super. 2014). "An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence." *Id.* We conduct a four-part test to determine whether:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post[-]sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

*Commonwealth v. Baker*, 72 A.3d 652, 662 (Pa. Super. 2013) (citation omitted).

The trial court contends this issue is waived because Appellant did not file a post-sentence motion. Trial Court Opinion, 5/11/22, at 7-8 (citing *Commonwealth v. Mann*, 820 A.2d 788, 794 (Pa. Super. 2003) and 42 Pa.C.S.A. § 9781(b)). Similarly, the Commonwealth argues the issue is waived because Appellant "failed to include a 2119(f) Statement in his Brief." Commonwealth Brief at 12. We agree the issue is waived.

The failure to file a post-sentence motion results in waiver of claims relating to the discretionary aspects of sentencing. *See Commonwealth v. Reaves*, 923 A.2d 1119, 1125 (Pa. 2007).

> Likewise,
>
> An appellant who challenges the discretionary aspects of a sentence in a criminal matter **shall** set forth in a separate section of the brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence.

Pa.R.A.P. 2119(f) (emphasis added). When the appellant has not included a Rule 2119(f) statement and the Commonwealth has not objected, this Court may ignore the omission. *Commonwealth v. Kiesel*, 854 A.2d 530, 533 (Pa. Super. 2004). "However, this option is lost if the [Commonwealth] objects to

a 2119(f) omission. In such circumstances, this Court is precluded from reviewing the merits of the claim and the appeal must be denied." ***Id.*** Here, the Commonwealth has expressly objected to Appellant's failure to include a Rule 2119(f) statement in his brief. Commonwealth Brief at 13. Thus, "this Court may not review the merits" of Appellant's second issue.[3] ***Id.***

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/29/2022

---

[3] In the absence of waiver, Appellant's sentencing issue would not merit relief. ***See*** Trial Court Opinion, 5/11/22, at 8-9 (observing Protection from Abuse Act authorizes incarceration of up to 6 months, and multiple violations may be consecutive or concurrent). The trial court "reviewed the history of the PFA case as well as the actions of [Appellant] when imposing sentence … within the statutorily mandated maximum," and concluded Appellant's sentence "was warranted." ***Id.*** at 9.