**COMMONWEALTH of Pennsylvania**

v.

**Darren L. FELDER, Appellant**

**No. 2894 EDA 2016**

Superior Court of Pennsylvania.

Submitted September 20, 2017

Filed December 11, 2017

Christopher W. McMullin, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: PANELLA, J., DUBOW, J., and FITZGERALD, J.*

OPINION BY DUBOW, J.:

Appellant, Darren L. Felder, appeals from the Judgment of Sentence entered in the Court of Common Pleas of Philadelphia County following his conviction for Criminal Contempt[1] for Violation of Protection from Abuse Order. After careful review, we affirm.

Lisa Felder, Appellant's wife, obtained a Final Protection from Abuse Order ("PFA Order") against Appellant, which is effective from December 19, 2014 through December 18, 2017. The PFA Order states that Appellant shall not abuse, harass, stalk, or threaten Ms. Felder but does not limit other contact between Appellant and Ms. Felder. After obtaining the PFA Order, Ms. Felder continued to live with Appellant, and both of them resided with a roommate, Joyce Brown.

---

* Former Justice specially assigned to the Superior Court.

1.  23 Pa.C.S. § 6114.

On November 7, 2015, at approximately 6:00 A.M., Ms. Brown and Appellant were inside the home when Ms. Brown smelled smoke and contacted Ms. Felder, who was not home at the time. Ms. Felder immediately reported the smoke to the fire department and returned home. When the fire department arrived at the home, Appellant refused their services. Appellant also refused to allow Ms. Felder to enter the home. According to Ms. Felder, "I went to reach in—my screen door don't have a bottom. It don't have a bottom glass or screen. So I tried to reach in to unlock the door and as I'm unlocking the door he grabs my fingers, the three fingers and he twists my fingers to lock the door. So that went back and forth for several minutes until it started getting numb and I snatched my hand from under there. And I walked down the steps and I called 911." (N.T. Hearing, 8/11/16, at 22–23). Ms. Felder's thumb, pointer finger, and middle finger were red, swollen, and numb for a few days following the incident and she self-treated by immersing her fingers in ice a few times a day. Ms. Brown witnessed the incident between Appellant and Ms. Felder, she observed Appellant standing in the doorway and saw Ms. Felder stumble back from the door. Ms. Brown noticed Ms. Felder shaking and holding her hand after the confrontation.

On August 11, 2016, after a bench trial, the trial court convicted Appellant of Criminal Contempt for Violation of a PFA Order and subsequently sentenced Appellant to a term of six months' reporting probation.

Appellant timely appealed. On October 11, 2016, the trial court ordered Appellant to file a Pa.R.A.P. 1925(b) Statement of Errors Complained of on Appeal ("1925(b) Statement") and Appellant failed to comply. On November 16, 2016, Appellant filed an Application for Remand with this Court requesting an opportunity to file a 1925(b) Statement *nunc pro tunc*. On December 12, 2016, this Court granted Appellant's Application for Remand and ordered Appellant to file a 1925(b) Statement. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

1. Whether the trial court erred as a matter of law in finding Appellant guilty of violating a non-eviction, [PFA] Order, where there was insufficient evidence of intent to do so?

2. Whether the trial court erred as a matter of law in finding Appellant guilty of violating an abuse/protection only [PFA] Order (23 Pa.C.S. [§ 6114(a)] ) where the evidence was insufficient to establish a violation of the terms of the Order?

Appellant's Brief at 3 (some capitalization omitted):

In both of his issues, Appellant avers that the evidence was insufficient to prove Criminal Contempt for Violation of a Protection from Abuse Order. *See* Appellant's Brief at 3. We review a contempt conviction for an abuse of discretion. *Commonwealth v. Haigh*, 874 A.2d 1174, 1177 (Pa. Super. 2005). We rely on the discretion of the trial court judge and are confined to a determination of whether the facts support the trial court's decision. *Id.* at 1176–77. In reviewing whether the evidence was sufficient to support the conviction, "we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt." *Commonwealth v. Taylor*, 137 A.3d 611, 614 (Pa. Super. 2016) (*en*

*banc* ) (citation and quotation omitted). In applying the above test, "we may not weigh the evidence and substitute our judgment for the fact-finder." *Commonwealth v. Brumbaugh*, 932 A.2d 108, 109 (Pa. Super. Ct. 2007) (citation and quotation omitted). Finally, "the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Id.* at 110.

This Court has repeatedly stated that "[t]he purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." *Commonwealth v. Lambert*, 147 A.3d 1221, 1226 (Pa. Super. 2016) (citation and quotation omitted). "Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order." *Commonwealth v. Jackson*, 10 A.3d 341, 346 (Pa. Super. 2010) (citation and quotation omitted). A charge of indirect criminal contempt consists of a claim that a violation of an order occurred outside the presence of the court. *Lambert, supra* at 1226.

In order to establish indirect criminal contempt, the Commonwealth must prove: "1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent." *Commonwealth v. Walsh*, 36 A.3d 613, 619 (Pa. Super. 2012) (citation and quotation omitted).

Here, Appellant concedes that the PFA Order was clear, that he had notice of the PFA Order, and that he acted of his own volition. *See* Appellant's Brief at 7–8. Nonetheless, Appellant argues that there was insufficient evidence to prove indirect criminal contempt because Appellant did not act with "wrongful intent;" rather, his intent was to close the door. *Id.* at 8. Appellant further argues that his "conduct was insufficient to be considered abuse" because it was not "reckless or intentional" but rather "an encounter over a locked front door." *Id.* at 8–9.

There is no dispute that the PFA Order in question stated Appellant shall not "abuse, harass, stalk, or threaten" Ms. Felder. The PFA Act defines abuse, in pertinent part, as "[a]ttempting to cause or intentionally, knowingly, or recklessly causing bodily injury[.]" 23 Pa.C.S § 6102. The trial court found both Ms. Felder and Ms. Brown's testimony to be "credible" and "corroborated" and determined that Appellant's actions of twisting and manipulating Appellant's fingers until they "became numb, painful, and swollen" rose to the level of abuse as the actions were intentional and caused bodily injury to Ms. Felder. Trial Court Opinion, filed 1/18/17, at unpaginated 7.

The trial court also concluded that there was sufficient evidence to prove that Appellant had the "wrongful intent" to establish indirect criminal contempt: "[A]ppellant's wrongful intent is demonstrated by the testimony of the witnesses as there is no other valid explanation for his conduct." *Id.* Indeed, although Appellant argues that it was his intent to close the door rather than harm Ms. Felder, the record reveals that the door remained closed, and was never opened, during the entire altercation between Appellant and Ms. Felder.

We will not re-weigh the evidence or substitute our judgment for that of the fact-finder. *See Brumbaugh, supra* at 109. Our review of the record reveals that the evidence presented at trial supports the trial court's conclusions. The Common-

wealth presented sufficient evidence to prove Contempt for Violation of a PFA Order, and, thus, we affirm the judgment of sentence.

Judgment of Sentence affirmed.