J-S24031-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

L.P.                                             :     IN THE SUPERIOR COURT OF
                                                 :            PENNSYLVANIA
                                                 :
                  v.                             :
                                                 :
                                                 :
                                                 :
J.B.                                             :
                                                 :
                  Appellant                      :     No. 2613 EDA 2018

Appeal from the Judgment of Sentence Entered July 31, 2018
In the Court of Common Pleas of Monroe County Civil Division at No(s):
2010-05595

BEFORE:   LAZARUS, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                   **FILED JULY 02, 2019**

Appellant, J.B., appeals from the July 31, 2018, judgment of sentence

ordering him to pay a $300 fine, plus costs, after the court found him to be in

indirect criminal contempt of a final order entered pursuant to the Protection

From Abuse ("PFA") Act, 23 Pa.C.S. §§ 6101-6122.  We affirm.

The trial court sets forth the relevant facts and procedural history, as

follows:

> By way of background, on December 4, 2017, a 3-year, final no-
> contact PFA was issued against Defendant [hereinafter "J.B."].
> [Plaintiff, "L.P.", with whom J.B. has two minor children, filed a]
> contempt petition [dated] June 21, 2018, and a separate
> contempt petition [dated] on June 26, 2018.  A hearing was held
> on July 16, 2018, on both petitions.  The petition filed on June 21,
> 2018, was granted, and the June 26, 2018, petition was denied.
> J.B. was sentenced to pay a $300 fine, plus costs.  J.B. filed a
> Post-Sentence Motion on July 26, 2018, which was denied on July
> 31, 2018.  J.B. filed a Notice of Appeal on August 20, 2018 and on
> August 30, 2018, [the trial court] ordered J.B. to file a 1925(b)

---

\*   Former Justice specially assigned to the Superior Court.

statement of errors complained of on appeal within 21 days. On September 13, 2018, J.B. filed a timely 1925(b) statement.

In his statement, J.B. contends that the evidence was insufficient to hold him in indirect criminal contempt because his actions were *de minimus* and without [the] wrongful intent [necessary to a finding of criminal contempt].

. . .

Here, J.B. sent [white lilies] anonymously to [L.P. at her place of business] along with an unsigned, cryptic note that read, "Hope you are okay. And, remember, eventually, this will all be a memory." N.T., 8/2/18, at 7. L.P. testified that because of the past history (of domestic violence) and pending criminal charges against J.B. for burglary and assault of her boyfriend, which led to the issuance of the final PFA, that [her] receipt of the note kept her in "a state of constant fear." N.T. at 8.

Trial Court Opinion, 10/17/18, at 1-2.

Finding that evidence proved J.B.'s wrongful intent beyond a reasonable doubt, the court entered judgment of sentence on the charge of indirect criminal contempt. *Id*. This timely appeal followed. In its subsequent Rule 1925(a) opinion, the trial court explained, "[g]iven the history of domestic violence and the nature and extent of the violent assault J.B. is alleged to have perpetrated against L.P.'s boyfriend, it is easy to understand L.P.'s fear of J.B." TCO, at 3.

Herein, J.B. contends the evidence against him was insufficient to prove the requisite element of wrongful intent. Our standard of review is well-settled.

We review a contempt conviction for an abuse of discretion. We rely on the discretion of the trial court judge and are confined to a determination of whether the facts support the trial court's decision. In reviewing whether the evidence was sufficient to

- 2 -

support the conviction, "we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt." In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

This Court has repeatedly stated that the purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse. Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order. A charge of indirect criminal contempt consists of a claim that a violation of an order occurred outside the presence of the court.

In order to establish indirect criminal contempt, the Commonwealth must prove: 1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent.

***Commonwealth v. Felder***, 176 A.3d 331, 333–34 (Pa. Super. 2017) (brackets, quotation marks, and citations omitted).

J.B. asserts that the Commonwealth failed to prove beyond a reasonable doubt that he acted with wrongful intent to violate the PFA order when his actions were *de minimus* and non-threatening, and where he did not intend his actions to be threatening. In support of this claim, J.B. points to his testimony explaining that he sent the lilies and the anonymous note to L.P. because he had just learned she had been arrested for an altercation with her boyfriend. He insisted that both his identity and good will should have been

immediately apparent from the note because he frequently had used the expression "this will soon be a memory" to calm L.P. and their children during difficult times in the past. N.T., 7/16/18, at 18.

In this regard, J.B. likens his behavior to that of the alleged contemnor in *Commonwealth v. Haigh*, 874 A.2d 1174 (Pa.Super. 2005), in which this Court reversed a conviction for indirect criminal contempt of a PFA order. We find *Haigh* clearly distinguishable on its facts.

The PFA order in *Haigh* prohibited the defendant Haigh from having any contact with his estranged wife of 31 years. *See id*., at 1177. The contact/communication in question occurred during an indirect criminal contempt hearing based on previous allegations that Haigh attempted to call and write his wife from prison in violation of the PFA order. During the hearing, a shackled Haigh shuffled toward his wife, leaned over, asked if she was "alright" after her surgery to remove a mass from her breast, and urged her to keep in touch. *Id*. at 1175-76. The deputy sheriff immediately pulled Haigh back and charged him with indirect criminal contempt for his actions.

At the ensuing contempt hearing, both the deputy sheriff and Mrs. Haigh testified that Haigh had not said or done anything threatening toward Mrs. Haigh, nor did Mrs. Haigh feel threatened by Haigh's conduct. The trial court, nevertheless, convicted Haigh of indirect criminal contempt.

On appeal, we reversed despite acknowledging our deferential standard of review requiring "much reliance" upon the discretion of the trial court. *Id*. at 1176. The "peculiar circumstances" involved in the case, we reasoned,

could have led a reasonable person in Haigh's position to believe the "PFA order was relaxed to some extent in the courtroom context, especially where [the appellant] was shackled and the victim was protected by an armed deputy sheriff." *Id*. at 1177. Also, we noted, Haigh "had been brought into a form of contact with his wife[, and] both [he] and Mrs. Haigh had the opportunity to speak at the hearing. *Id*.

The testimonies regarding Haigh's courtroom conduct at issue[1] also pointed to the absence of both a threatening intent and effect. The appellant testified that he did not believe he was threatening Mrs. Haigh, and neither she nor anyone else testified that the appellant threatened her verbally or physically at the time in question. In fact, Mrs. Haigh testified explicitly that she had not felt threatened by the appellant's actions and words.

Consequently, we discerned no wrongful intent from the evidence, which otherwise revealed an infraction that was both *de minimis* and non-threatening. Accordingly, we vacated the order entering judgment of sentence of indirect criminal contempt.

Unlike in **Haigh**, the circumstances in the case *sub judice* supplied no reason for J.B. to believe the strict no-contact provisions of the PFA order governing his conduct were relaxed. In fact, a reasonable person in J.B.'s

---

[1] This Court recognized that Haigh's act of addressing Mrs. Haigh while *in the courtroom* did not fit within the definition of *indirect* criminal contempt, which involves contemptuous actions *outside* the presence of the court. *Id.* at 1177 n. 4. This fact does not diminish **Haigh**'s relevance to our inquiry into whether the trial court properly found J.B.'s actions at issue reflected a wrongful intent.

position would have understood that his prior acts of physical aggression against both L.P. and her boyfriend—with the latter instance forming the basis for J.B.'s pending criminal trial on charges of attempted homicide, at which L.P. was scheduled to testify—essentially precluded the possibility of an exception to the order. Moreover, the trial court found L.P. credible when she testified that the anonymous sending of white lilies with a cryptic note to her place of employment caused her fear and trepidation, a fact further distinguishing the present matter from *Haigh*.

In sum, we find the trial court properly inferred wrongful intent from J.B.'s anonymous and cryptic communication made in disregard of a final PFA "no-contact" order. Sent in the immediate wake of L.P.'s own unrelated domestic and legal difficulties, the flowers and unsigned note had an obviously invasive and menacing quality to them. It also should have been apparent to J.B. that a furthering negative effect upon L.P. would likely follow when she predictably contacted the florist and discovered he was the sender, as his history of violence toward her and his interest in preventing her adverse testimony at his pending criminal trial could only add to the intimidating environment created. Presented with this record, the court reasonably disbelieved J.B.'s testimony expressing a benevolent intent behind the communication.

Under such circumstances, therefore, we discern no error with the court's conclusion that J.B. was guilty of indirect criminal contempt when he contacted L.P. in contravention of the final PFA order in effect. *See id.*

(holding judges should use common sense and consider context and surrounding factors in making determination as to whether violation of a PFA is truly intentional). As J.B.'s issue merits no relief, we affirm judgment of sentence.

      Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/2/19