J-S46007-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICHARD FRANCIS ZIMMERMAN | : | |
| | : | |
| Appellant | : | No. 861 WDA 2023 |

Appeal from the Judgment of Sentence Entered June 26, 2023
In the Court of Common Pleas of Elk County Criminal Division at No(s):
CP-24-MD-0000034-2023

BEFORE:  DUBOW, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY DUBOW, J.:                    **FILED: March 6, 2024**

Appellant, Richard Zimmerman, appeals from the Judgment of Sentence entered on June 26, 2023, following his conviction for Indirect Criminal Contempt ("ICC") for violation of a Protection from Abuse Order.[1]  After careful review, we affirm.

**A.**

We glean the following factual and procedural history from the certified record.  D.G. ("Mother") and Appellant are parents of a minor child ("Child").  On March 30, 2022, Mother obtained a Final Protection from Abuse Order ("PFA Order") against Appellant, which, following two extensions, is effective

---

[1] 23 Pa.C.S. § 6114(a).

through June 30, 2026.[2]  The PFA Order states that, *inter alia*, Appellant "is prohibited from having **ANY CONTACT** with [Mother] [] either directly or indirectly, at any location[,]" and that he "shall not contact [Mother], either directly or indirectly, [] by telephone or any other means, including through third persons."  PFA Order, 12/6/22, at 2 (emphasis in original).[3]  Appellant does not dispute that he knew of the PFA Order and its contents.

The parties also have a custody order relating to Child, effective July 14, 2022.  The custody order awarded Mother primary custody of Child but gave Appellant custody on alternate weekends, beginning on Fridays at 4:30 PM. The custody order also specified the appropriate locations for custody exchanges, including the home of Mother's relative, Shannon Ritchie.

The custody order further required that "[a]ny direct communication between [M]other and [Appellant] must be made by utilizing the Our Family Wizard ["OFW"] social media platform as there is currently a final protection from abuse order [between the parties.]"  Custody Order, 7/14/22, at 2, ¶ D1.  The remainder of this paragraph requires that the parents share information related to, *inter alia*, the child's medical care, schooling, and activities "in a timely manner in order to promote the best interests of the

---

[2] Appellant has previously violated the PFA Order on two occasions, in October and December 2022.

[3] The December 6, 2022 PFA Order is the most recent.  However, the prior two PFA Orders (issued on March 30, 2022, and October 17, 2022) contain the same language.

child." *Id.* at 3, ¶ D1. The custody order does not indicate that the parties may use OFW as an open forum to air their grievances concerning the custody arrangements or make accusations towards the other parent. Moreover, the custody order specifically requires that neither parent "belittle, degrade, or disparage the other parent[.]" *Id.* at 4, ¶D4.

On Friday, June 2, 2022, Mother arrived at Ms. Ritchie's house at 4:30 PM for the custody exchange. Appellant had not arrived or contacted her by 5:15 PM, so Mother left Ms. Ritchie's house with Child.

The next afternoon, Mother and Child attended Child's baseball game at a local park. After the game, Appellant approached Mother because he wanted to take Child with him. Appellant "came up behind [Mother] and was confrontational, swearing, trying to take [Child] away from [her], [and] calling [her] names." N.T. Trial, 6/26/23, at 12. Child "started crying and was scared." *Id.* at 13. Mother's mother told Appellant to leave, and Mother and Child drove home.

After Mother and Child left, Appellant sent Mother two lengthy messages through OFW. In the messages, he expressed his dissatisfaction with the custody arrangements, his frustration that Mother did not let Appellant take Child even though it was his weekend, and his belief that Mother's actions were causing Child to resent her. He did not make any threats.

Later that afternoon, Appellant contacted Elk County Control and requested police assistance with the custody matter. Sergeant Anthony Pistner of the St. Mary's Police Department contacted Appellant, who

requested that police "harass [Mother] like we harass him." **Id.** at 28. After speaking with Appellant and Mother, Sergeant Pistner charged Appellant with one count of ICC based on both the confrontation at the park and the OFW messages.

Appellant proceeded to a bench trial on June 26, 2023. Mother and Sergeant Pistner testified in accordance with the above facts. The court found Appellant in contempt of the PFA Order and sentenced him to 90 days' incarceration. This timely appeal followed.

**B.**

Appellant raises two issues for our review:

1. Did the Court of Common Pleas commit a reversable [*sic*] error when it held that [Appellant] had clear and unambiguous notice that contacting [Mother] via the [OFW] application would result in a violation of a Protection [f]rom Abuse Order even though the custody order between [Appellant] and Mother specifically authorized the use of [OFW] for communication?

2. Did the Court of Common Pleas commit a reversable [*sic*] error when it held that a non-violent and non-threatening [OFW] application message sent by [Appellant] constituted a violation of a Protection [f]rom Abuse Order when [Appellant] was authorized by a custody order to communicate with Mother regarding custody via the [OFW] application?

Appellant's Br. at 6 (suggested answers omitted).

**C.**

"We review a contempt conviction for an abuse of discretion." **Commonwealth v. Felder**, 176 A.3d 331, 333 (Pa. Super. 2017). We rely

- 4 -

on the trial court's discretion and confine our review to whether the facts support the trial court's decision. ***Id.***

To establish ICC, the Commonwealth must prove that:

(1) the [PFA] Order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited;

(2) the contemnor had notice of the Order;

(3) the act constituting the violation must have been volitional; and

(4) the contemnor must have acted with wrongful intent.

***Commonwealth v. Brumbaugh,*** 932 A.2d 108, 110 (Pa. Super. 2007).

In reviewing a court's determination, "we may not weigh the evidence and substitute our judgment for the fact-finder." ***Id***. at 109 (citation omitted). Finally, "the trier of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." ***Felder***, 176 A.3d at 334 (citation and internal quotation marks omitted).

**D.**

We address both of Appellant's issues together because they raise the same challenge: that the trial court erred in finding that Appellant's sending Mother messages on OFW violated the PFA Order.[4]  Appellant first argues that

---

[4] In his brief, Appellant also asserts that his in-person contact was non-threatening and did not violate the PFA Order.  Appellant's Br. at 19.  However, Appellant failed to raise this claim in his Rule 1925(b) statement.  Therefore,
*(Footnote Continued Next Page)*

the court erred in finding that the PFA Order was "sufficiently clear" that Appellant was prohibited from contacting Mother via OFW because the parties' custody order permitted them to utilize OFW to discuss custody. Appellant's Br. at 10, 14. In his second claim, Appellant argues that the court erred in finding that the OFW messages violated the PFA Order because the messages were non-threatening, and again, the custody order permitted them to communicate via OFW. *Id*. at 14, 19-20.

Appellant assumes that because the OFW messages at issue pertained to custody, and were, thus, "explicitly authorized" under the custody order, he had no notice that these communications were prohibited by the PFA Order. Appellant's Br. at 17.

The parties' custody order provides that, because of the PFA Order, the parties must use OFW for any direct communication, including discussing the Child's education, activities, and medical care. Custody Order at 2-3, ¶D1. The custody order does not authorize communications that exceed what is necessary for the education, activities, and medical care of the Child and, in fact, contains a paragraph which requires that neither parent "belittle, degrade, or disparage the other parent[.]" *Id.* at 4, ¶D4.

Here, the trial court found that Appellant's messages violated the PFA Order and exceeded the scope of the custody order. After reviewing the orders

---

he has waived this claim. ***See*** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement . . . are waived.); ***Commonwealth v. Lord***, 719 A.2d 306, 309 (Pa. 1998) (holding that any issues not raised in a Rule 1925(b) Statement are waived).

at issue and Appellant's communications, the court concluded Appellant "crossed the line not only in the length but in the subject matter" of the communications allowed under the custody order. N.T. Trial at 36. It found that the custody order permitted contact through OFW, but that page 3 "provides context" for the type of communication allowed (*e.g.*, regarding Child's medical care, school, and activities), and that "even under the most generous" reading of the custody order, Appellant's messages exceeded what was contemplated by the custody order. N.T. Trial at 35-36.

Our review of the record, including copies of the OFW messages, with all factual inferences in favor of the Commonwealth as verdict winner, supports the trial court's conclusion that the messages exceeded what was permitted by the custody order. Appellant was fully aware of the limited use of OFW provided in the custody order. Appellant's Br. at 13. In the messages, however, Appellant expresses his frustration that the parties no longer have 50/50 custody and that Mother has more time with Child than he does. Commonwealth's Ex. 5-6. He further accuses Mother of "standing in the way of [Appellant and Child's] relationship" and asks her if she "enjoy[ed] breaking that kids [*sic*] heart." *Id.* As noted above, our review of the custody order indicates no provision allowing the parties to use OFW to complain about the custody arrangements and provides no basis for Appellant to use OFW to make accusations against Mother.

Appellant essentially asks us to re-weigh the evidence and interpret his messages differently than the trial court. This we will not do. ***See***

***Brumbaugh***, 932 A.2d at 109. Appellant's first issue, thus, fails to garner relief.

Appellant also contends that the communications were non-threatening, and, therefore, not violative of the PFA order. ***See*** Appellant's Br. at 18. In support, he notes that he has had previous communications with Mother via OFW without incurring contempt charges. ***Id***. Appellant's argument is not persuasive.

The PFA order prohibits **all** contact. ***See generally***, PFA Order, 12/6/2022. It does not specify that only threatening contact is prohibited. Appellant does not dispute that he contacted Mother. Accordingly, the court did not err in concluding that he violated the PFA order.[5]

In sum, we conclude Appellant had notice of both the custody order and the PFA order. The tenor and content of his communications exceeded the scope of the communications permitted by the custody order. The court's contempt finding is supported by the record and the court properly exercised its discretion in reaching its decision.

Accordingly, we affirm the judgment of sentence.

Judgment of Sentence affirmed.

---

[5] Further, the record before us does not contain the content of, or circumstances pertaining to, Appellant's prior communications via OFW. Accordingly, we have no basis upon which to conclude that those prior communications have any relevance to the instant contempt proceeding.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

3/6/2024