J-S33045-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DENNIS WAYNE TYNDALL | : | |
| | : | |
| Appellant | : | No. 212 MDA 2024 |

Appeal from the Judgment of Sentence Entered January 10, 2024
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-MD-0000871-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DENNIS WAYNE TYNDALL | : | |
| | : | |
| Appellant | : | No. 213 MDA 2024 |

Appeal from the Judgment of Sentence Entered January 10, 2024
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-MD-0000636-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DENNIS TYNDALL | : | |
| | : | |
| Appellant | : | No. 214 MDA 2024 |

Appeal from the Judgment of Sentence Entered January 10, 2024
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-MD-0001215-2022

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| DENNIS WAYNE TYNDALL | : | |
| Appellant | : | No. 215 MDA 2024 |

Appeal from the Judgment of Sentence Entered January 10, 2024
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-MD-0001533-2021

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| DENNIS WAYNE TYNDALL | : | |
| Appellant | : | No. 216 MDA 2024 |

Appeal from the Judgment of Sentence Entered January 10, 2024
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-MD-0001532-2021

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| DENNIS WAYNE TYNDALL | : | |
| Appellant | : | No. 217 MDA 2024 |

Appeal from the Judgment of Sentence Entered January 10, 2024
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-MD-0001503-2021

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DENNIS WAYNE TYNDALL | : | |
| | : | |
| Appellant | : | No. 218 MDA 2024 |

Appeal from the Judgment of Sentence Entered January 10, 2024
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-MD-0000908-2021

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DENNIS WAYNE TYNDALL | : | |
| | : | |
| Appellant | : | No. 219 MDA 2024 |

Appeal from the Judgment of Sentence Entered January 10, 2024
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-MD-0001258-2021

BEFORE:  OLSON, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED: JANUARY 8, 2025**

In these consolidated appeals, Appellant Dennis Wayne Tyndall appeals from the judgments of sentence imposed after he was convicted of eight counts of indirect criminal contempt[1] (ICC) of an order entered pursuant to the Protection from Abuse (PFA) Act.[2]  Appellant challenges the sufficiency of

_____

[1] 23 Pa.C.S. § 6114.

[2] 23 Pa.C.S. §§ 6101-6122.

the evidence establishing his intent to violate the PFA order for each count. We affirm.

## Factual History

On December 16, 2020, the trial court entered a PFA order on behalf of Bryna Smith (Victim) at docket number 2019-FC-002133-12. The PFA order prohibited Appellant from having any contact with Victim, and also prohibited Appellant from posting remarks or images of Victim on social media networks, including Facebook. **See** PFA Order, 2019-FC-002133-12, 12/16/20, at 2. The PFA order was in effect from December 16, 2020 until December 16, 2023. **See id.** at 1, 3.

### 213 MDA 2024 (CP-67-MD-636-2021)

On the evening of March 3, 2021, Appellant made a phone call to Victim. **See** N.T. Trial, 5/17/23, at 32-33. During the call, Appellant was crying and repeatedly said Victim's name. **See id.** at 33-34. Victim hung up and called the police. **See id.** at 34. Detective Michael Zinn of the York County Regional Police Department called Appellant to discuss Victim's allegations. **See id.** at 38. Appellant admitted to contacting Victim and stated that he was trying to convince her to seek mental health treatment. **See id.** at 39. Appellant also asked Detective Zinn if he would be arrested for contacting Victim. **See id.** at 39, 41. Appellant testified at trial that he learned from his friend that Victim had been making threatening remarks about Appellant and that he called Victim to convince her to stop. **See** N.T. Trial, 9/13/23, at 8.

**218 MDA 2024 (CP-67-MD-908-2021)**

On April 4, 2021, Appellant sent an email to Victim stating that he wanted to "make things right" with Victim's mother, who had previously hired Appellant to restore her late husband's Corvette in 2015 or 2016 and ultimately reached a settlement agreement with Appellant after he failed to complete the restoration work. *See* N.T. Trial, 5/17/23, at 43; N.T. Trial, 9/13/23, at 9; Commonwealth's Exhibit 2. Appellant admitted to sending the email to Victim on April 4, 2021. *See* N.T. Trial, 9/13/23, at 24. On April 5, 2021, Appellant sent Victim another email asking her to call him. *See* N.T. Trial, 5/17/23, at 43; N.T. Trial, 9/13/23, at 9; Commonwealth's Exhibit 3.

**212 MDA 2024 (CP-67-MD-871-2021)**

On April 11, 2021, Appellant sent an email to Victim stating that he had a gift for her son. *See* N.T. Trial, 5/17/23, at 60; N.T. Trial, 9/13/23, at 11, 32; Commonwealth's Exhibit 5. Appellant used a different email address to contact Victim than he had used in the prior incidents. *See* N.T. Trial, 5/17/23, at 61; N.T. Trial, 9/13/23, at 32. Officer William Bernath of the York County Regional Police Department went to Appellant's residence on or about April 12, 2021 to discuss that email with him. *See* N.T. Trial, 5/17/23, at 74. At that time, Appellant told Officer Bernath that he did not remember sending the email. *See id.*

At trial, Appellant testified that he sent the April 11, 2021 email, and explained that he had gotten a pair of shoes for Victim's son because he wanted Victim to return a pair of collectible shoes that belonged to him. *See*

N.T. Trial, 9/13/23, at 11, 26, 32. Appellant claimed that a Trooper De La Cruz[3] of the Pennsylvania State Police informed him that there was not an active PFA against him at that time. *See id.* at 26-27.

<u>217 MDA 2024 (CP-67-MD-1503-2021)</u>

Victim testified that on April 26, 2021, she received a phone call from a blocked number, which she answered because she thought it was a call from her doctor's office. *See* N.T. Trial, 5/17/23, at 79-80. Victim recognized Appellant as the caller. *See id.* at 80. Victim could not recall exactly what Appellant said, but she remembered that he sounded distraught, and he said that he wanted to make amends with her. *See id.* Appellant testified that he does not remember calling Victim's phone on that date. *See* N.T. Trial, 9/13/23, at 15-16, 27.

<u>219 MDA 2024 (CP-67-MD-1258-2021)</u>

Appellant called Victim on April 28, 2021. *See* N.T. Trial, 5/17/23, at 81. Victim testified that Appellant said "do you want me to embarrass you and end this all[?]" *Id.* at 82. Appellant admitted to calling Victim and testified that he wanted to encourage Victim to tell the truth at an upcoming court proceeding where Victim was the defendant. *See* N.T. Trial, 9/13/23, at 13, 17, 27-28.

---

[3] Trooper De La Cruz's first name does not appear in the certified record.

<u>216 MDA 2024 (CP-67-MD-1532-2021)</u>

On June 1, 2021, Appellant's neighbor Jamie Gladfelter saw that Appellant had posted images of Victim with injuries on his Facebook page. ***See*** N.T. Trial, 5/17/23, at 6-10; ***see also*** Commonwealth's Exhibit 1. Ms. Gladfelter recognized the images as ones that Victim had shown her in 2019, at which time Victim had alleged that Appellant caused those injuries. ***See*** N.T. Trial, 5/17/23, at 7-8, 11. Ms. Gladfelter sent a screenshot of Appellant's Facebook post to an individual who was also acquainted with Victim. ***See id.*** at 10-12. Victim testified that the images were taken in November 2019, and she had posted them on Facebook along with an allegation that Appellant had abused her. ***See id.*** at 16, 22-23.

Appellant testified that Victim had reposted the images of her injuries in 2021 and that he made a Facebook post denying the allegations that Victim made against him. ***See*** N.T. Trial, 9/13/23, at 17-18, 28-29, 33.

<u>215 MDA 2024 (CP-67-MD-1533-2021)</u>

On June 10, 2021, Appellant made a Facebook post that contained photos of Victim and screenshots of text messages they exchanged before Victim obtained the PFA against Appellant. ***See*** N.T. Trial, 5/17/23, at 91-103; Commonwealth's Exhibit 6. Appellant admitted to making this Facebook post. N.T. Trial, 9/13/23, at 18. Appellant stated he was responding to Victim's demeaning comments about him, and his post discussed bullying. ***See id.*** at 19, 30.

<u>214 MDA 2024 (CP-67-MD-1215-2022)</u>

In the summer of 2021, Appellant obtained a PFA order against Victim. ***See*** N.T. Trial, 5/17/23, at 111-12, 116-17; N.T. Trial, 9/13/23, at 20, 31. On April 17, 2022, Appellant made a Facebook post where he stated he was waiving the PFA order protecting him and giving the other party permission to contact him. ***See*** N.T. Trial, 5/17/23, at 112-13; Commonwealth's Exhibit 8. Appellant testified that he made that Facebook post and that it was about the PFA he had against Victim. ***See*** N.T. Trial, 9/13/23, at 20-21, 31.

**Procedural History**

As a result of the aforementioned incidents, Appellant was charged with eight counts of ICC. Following a bench trial on May 17, 2023 and September 13, 2023, the trial court found Appellant guilty of all eight counts.

On January 10, 2024, the trial court imposed consecutive sentences of three months' probation and mandatory fines of $300 for each ICC conviction. Appellant's aggregate sentence is two years' probation and $2,400 in fines.

Appellant did not file post-sentence motions but filed timely notices of appeal at each trial court docket number.[4] Appellant also filed court-ordered Pa.R.A.P. 1925(b) statements at each trial court docket number. In lieu of a Rule 1925(a) opinion, the trial court issued an order indicating that it found

_____

[4] Appellant filed separate notices of appeal at each trial court docket, and this Court consolidated Appellant's appeals pursuant to Pa.R.A.P. 513. ***See*** Order, 3/27/24, at 2-3 (unpaginated).

- 8 -

that the Commonwealth had met its burden of proving Appellant's wrongful

intent.  Trial Ct. Order, 5/5/24.

On appeal, Appellant raises the following issue:

Whether there was insufficient evidence to convict [Appellant] of indirect criminal contempt for violating a protection from abuse order where there was insufficient evidence to establish he had wrongful intent on any of the eight dockets under which he was convicted?

Appellant's Brief at 4.[5]

In reviewing these issues, we are guided by the following principles:

We review a contempt conviction for an abuse of discretion.  We rely on the discretion of the trial court judge and are confined to a determination of whether the facts support the trial court's decision.  In reviewing whether the evidence was sufficient to support the conviction, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the

---

[5] We note that in the statement of question presented in his brief, Appellant frames his eight sufficiency claims as a single claim.  **See** Appellant's Brief at 4.  However, Appellant separates the argument section of his brief into eight sections, one for each trial court docket number.  **See id.** at 15-24.  Pursuant to the Pennsylvania Rules of Appellate Procedure, the argument in Appellant's brief is required to be divided into separate sections for each question presented.  **See** Pa.R.A.P. 2119(a) (stating "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part . . . the particular point treated therein").  Although we do not condone Appellant's failure to comply with our Rules of Appellate Procedure, we do not find that appellate review is completely precluded, and we will not quash the appeal.  **See** Pa.R.A.P. 2101 (providing that if defects in the appellant's brief are substantial, the appeal or other matter may be quashed or dismissed); **see, e.g.**, **Commonwealth v. Lyons**, 833 A.2d 245, 252 (Pa. Super. 2003) (declining to quash where arguments can reasonably be discerned from the defective brief).

elements of the offense beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. Finally, the trier of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

This Court has repeatedly stated that "[t]he purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order. A charge of indirect criminal contempt consists of a claim that a violation of an order occurred outside the presence of the court.

In order to establish indirect criminal contempt, the Commonwealth must prove: 1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent.

*Commonwealth v. Felder*, 176 A.3d 331, 333-34 (Pa. Super. 2017) (citations omitted and some formatting altered).

This Court has further explained: "It is imperative that trial judges use common sense and consider the context and surrounding factors in making their determinations of whether a violation of a court order is truly **intentional** before imposing sanctions of criminal contempt." *Commonwealth v. Haigh*, 874 A.2d 1174, 1177 (Pa. Super. 2005) (emphasis in original). Additionally, in ICC matters, a defendant's "wrongful intent can be imputed by virtue of the substantial certainty that" the defendant's actions would bring the defendant into contact with the protected party in violation of the PFA order. *Commonwealth v. Brumbaugh*, 932 A.2d 108, 111 (Pa. Super. 2007); *see*

*also Commonwealth v. Lambert*, 147 A.3d 1221, 1227 (Pa. Super. 2016) (concluding that the defendant acted with wrongful intent when "he posted comments and an image 'regarding [the plaintiff]' on [Facebook] despite knowing the PFA order prohibited him from doing so[]" because although the defendant did not use the plaintiff's name, the contents of the post "lead to the inescapable conclusion that [the defendant] was referring to [the] plaintiff" (some formatting altered)).

In **Haigh**, the defendant had been convicted of ICC after he asked the protected party, his wife, about her cancer treatment while they were both in a courtroom for a trial on a separate ICC charge. **Haigh**, 874 A.2d at 1175-76. On appeal, this Court reversed, concluding that the defendant did not act with wrongful intent by speaking to his wife while in the courtroom. *Id.* at 1177. The **Haigh** Court explained that the context of the ICC trial, where both the defendant and his wife were both present and addressed the court, created confusion about whether the PFA order restricted the defendant from having contact with his wife. *Id.* Further, the defendant did not make any threatening remarks to his wife, he was shackled, and there was at least one armed deputy sheriff in the courtroom at the time. *Id.* The **Haigh** Court noted that its decision was based on "the peculiar circumstances" of that case. *Id.* at 1178.

### 213 MDA 2024 (CP-67-MD-636-2021)

We will address Appellant's convictions in chronological order based on the date of the offenses. Appellant argues that the evidence was insufficient

to establish that he acted with wrongful intent when he contacted Victim on March 3, 2021. Appellant's Brief at 16-17. Specifically, Appellant contends that he contacted Victim to "get her to stop talking about" Appellant. *Id.* at 17.

> Here, the trial court made the following findings of fact:
>
> [T]he court took testimony first from [Victim] and then [from Detective] Michael Zinn of the York [County] Regional Police Department. The court finds the testimony of those witnesses to be credible. This references a phone call [Victim] testified she received from a blocked number on or about March 3, 2021. [Victim] recognized the voice of [Appellant]. She noted that [Appellant] was crying and saying her name. [Victim] then contacted the police. [Detective] Zinn contacted [Appellant], and [Appellant] . . . conceded that he had spoken to [Victim]. The court finds that the Commonwealth has met the burden of proof in regard[] to the indirect criminal contempt. The court finds that [Appellant] did have notice of the [PFA] no contact order, that [Appellant] contacted [Victim] in violation of that order, and that he, in fact, intended to contact her despite the existence of the order.

N.T. Trial, 9/13/23, at 39-40 (some formatting altered).

Following our review of the record and viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we agree with the trial court that there was sufficient evidence to support Appellant's conviction for ICC in this case. *See Felder*, 176 A.3d at 333. Appellant called Victim's phone even though he knew that the PFA order prevented him from having any contact with Victim. *See Brumbaugh*, 932 A.2d at 111 (explaining that a defendant's wrongful intent can be imputed based on the defendant's actions). Further, this matter is distinguishable from *Haigh* because Appellant

- 12 -

did not contact Victim while they were both present in court for a proceeding related to the PFA order. *Cf. Haigh*, 874 A.2d at 1175-77. Lastly, Appellant asked Detective Zinn if he was going to be arrested for contacting Victim, which demonstrates that Appellant knew his conduct was wrongful at the time. *See* N.T. Trial, 5/17/23, at 39, 41. Therefore, Appellant is not entitled to relief on this claim.

### 218 MDA 2024 (CP-67-MD-908-2021)

Appellant next argues that the evidence was insufficient to establish that he acted with wrongful intent when he sent emails to Victim on April 4 and 5, 2021 to address a business dealing that he had with Victim's mother. Appellant's Brief at 22.

Here, the trial court made the following findings of fact:

As to 908-2021, the court took testimony from [Victim], as well as [Officer] Adam Cohick who is employed by the York [County] Regional Police Department. In this matter these referenced emails sent on or about April of 2021. These are referenced in Commonwealth's Exhibits Number 2 and Number 3. The court finds that these were authenticated properly by the Commonwealth. [Appellant] later admitted on cross-examination that these were sent. The court finds that the Commonwealth has met its burden of proof in this matter. The court finds that [Appellant] had notice of the [PFA] order, sent the two emails intentionally, and with knowledge that the existence of the PFA order in place. As a result, the court finds the Commonwealth met its burden of proof in that case.

N.T. Trial, 9/13/23, at 40 (some formatting altered).

Following our review of the record and viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we agree with the

trial court that there was sufficient evidence to support Appellant's conviction for ICC in this case. *See Felder*, 176 A.3d at 333. The record reflects that Appellant sent emails to Victim knowing that the PFA order prevented him from having any contact with Victim. The evidence is sufficient to impute wrongful intent to Appellant; therefore, he is not entitled to relief on this claim. *See Brumbaugh*, 932 A.2d at 111.

### 212 MDA 2024 (CP-67-MD-871-2021)

Next, Appellant argues that the evidence was insufficient to establish that he acted with wrongful intent when he sent an email to Victim on April 11, 2021, to inquire into giving a gift to Victim's son. Appellant's Brief at 15-16.

Here, the trial court made the following findings of fact:

[T]he court took testimony from [Victim], as well as [Officer] William Bernath of the York County Regional Police Department. The court finds the testimony from those two witnesses to be credible. This testimony references Commonwealth's Exhibit 5, which was an email sent by [Appellant] to [Victim] using his [Gmail] address. [Appellant] eventually conceded that he sent this email. As a result, the court finds that the Commonwealth has met its burden of proof. The court finds that [Appellant] had notice of the no contact order and that he sent [Commonwealth's] Exhibit 5 knowing that the order was in place. The court finds that he sent that order -- or sent that email in violation knowing that -- or with the intent to send it even though he knew it was in violation.

N.T. Trial, 9/13/23, at 40-41 (some formatting altered).

Following our review of the record and viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we agree with the

- 14 -

trial court that there was sufficient evidence to support Appellant's conviction for ICC in this case. *See Felder*, 176 A.3d at 333. Appellant sent Victim an email from a different email address than the one had used to contact her before. *See* N.T. Trial, 5/17/23, at 61; N.T. Trial, 9/13/23, at 32. The evidence is sufficient to impute wrongful intent to Appellant; therefore, he is not entitled to relief on this claim. *See Brumbaugh*, 932 A.2d at 111.

**217 MDA 2024 (CP-67-MD-1503-2021)**

Appellant argues that the evidence was insufficient to establish that he acted with wrongful intent when he called Victim on April 26, 2021 because he "made a brief comment to [Victim] regarding his desire to make amends." Appellant's Brief at 21. Appellant also contends that his "brief comment to [Victim] did not demonstrate wrongfulness and the Commonwealth did not present evidence that it was made [with] such an intent." *Id.* at 22.

Here, the trial court made the following findings of fact:

The court took testimony in this matter from [Victim], as well as, I believe it's [Officer] James Hess of the York County Regional Police Department. This involved a conversation or phone call, rather, initiated by [Appellant] on April 26, 2021. The call was made to [Victim]. [Victim] picked up the call even though it was from a blocked number thinking the call might be from the doctor's office. She testified that [Appellant] -- that she was able to identify [Appellant] as the one making the call. she indicated that [Appellant] wanted to make amends and that he was sorry. [Victim] then contacted the police concerning that call. The court finds that [Appellant] made the phone call despite having notice of the order of no contact. The court finds that the contact was made with the intent of contacting her even though he had notice of the order being in place at the time. The court finds the Commonwealth has met its burden of proof as to that case.

N.T. Trial, 9/13/23, at 41-42 (some formatting altered).

Following our review of the record and viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we agree with the trial court that there was sufficient evidence to support Appellant's conviction for ICC in this case. *See Felder*, 176 A.3d at 333. Appellant made a phone call to Victim even though he knew that the PFA order prevented him from having any contact with Victim. The evidence is sufficient to impute wrongful intent to Appellant, regardless of the brevity of the call. Therefore, he is not entitled to relief on this claim. *See Brumbaugh*, 932 A.2d at 111.

### 219 MDA 2024 (CP-67-MD-1258-2021)

In his eighth claim, Appellant argues that the evidence was insufficient to establish that he acted with wrongful intent when Appellant called Victim on April 28, 2021. Appellant's Brief at 23-24. Appellant contends the purpose of his call to Victim was to "apprise [her of] the embarrassment of her own court case and there was no other evidence presented that would demonstrate the wrongfulness of [Appellant's] intent." *Id.* at 24.

Here, the trial court made the following findings of fact:

This [matter] again related to a phone conversation or a phone call made by [Appellant] to [Victim]. The court notes that Officer Goodling used that phone number and verified that it belonged to [Appellant]. . . . The court finds the testimony of [Victim] to be credible that a call, in fact, was made. The court finds that [Appellant] was intentional in his decision to pick up the phone and contact [Victim] . . . . As a result, the court finds that the Commonwealth has met its burden of proof . . . .

N.T. Trial, 9/13/23, at 42 (some formatting altered).

Following our review of the record and viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we agree with the trial court that there was sufficient evidence to support Appellant's conviction for ICC in this case. **See Felder**, 176 A.3d at 333. Appellant made a phone call to Victim even though he knew that the PFA order prevented him from having any contact with Victim. Again, this matter is distinguishable from **Haigh** because Appellant did not contact Victim while they were both present in court for a proceeding related to the PFA order. **Cf. Haigh**, 874 A.2d at 1175-77. The evidence is sufficient to impute wrongful intent to Appellant; therefore, he is not entitled to relief on this claim. **See Brumbaugh**, 932 A.2d at 111.

## 215 MDA 2024 (CP-67-MD-1533-2021) & 216 MDA 2024 (CP-67-MD-1532-2021)

Appellant's claims for these appeals are related, therefore we discuss them together. Appellant argues that the evidence was insufficient to establish that he acted with wrongful intent in making Facebook posts discussing Victim on June 1 and June 10, 2021, because he was acting to protect his reputation in the community from Victim's demeaning statements about him. Appellant's Brief at 18-21. Appellant further contends that he was exercising his right to defend his reputation from Victim's attacks. **Id.** at 21.

Here the trial court made the following findings of fact:

Under docket 1532[-2011], the court heard from Jamie Gladfelter, [Victim], and [Officer Christopher] Glass. The court finds the testimony of the three witnesses in question to be credible. In

- 17 -

that matter, the issue in question was Commonwealth's Exhibit 1, which was a Facebook post. [Appellant] -- the court finds that [Appellant] intentionally posted that Commonwealth's Exhibit 1. [Appellant] has essentially admitted that on his cross-examination. The court finds that [Appellant] had notice of the order in question, the no contact order, and that he posted the Commonwealth's Exhibit 1 willfully. The court finds that Commonwealth's Exhibit 1 is a specific reference to issues that had existed between [Appellant] and [Victim]. So the court finds that the Commonwealth has met its burden of proof as to that case.

\* \* \*

The next matter before this court is 1533-2021. This matter involved Facebook post made on or about June of 2021 as set forth in [Commonwealth's] Exhibit 6. [Appellant] conceded that he, in fact, made the post. [Appellant] -- the court finds that [Appellant] intentionally posted the Facebook post even though he was aware that there was a protection from abuse order in place at the time. [Appellant's] explanation as to this matter, as well as in another matter, is he did this to protect his reputation. The court does not find that that is a defense to a protection from abuse order. [Appellant] could have sought modification of the protection from abuse order to permit him to make filings or make postings perhaps to defend his reputation. He did not make such an attempt to modify the protection from abuse order. The court finds that [Appellant] intentionally violated the order by making that post. He was aware that the order was in place and that it would constitute a violation of the order to make that post.

N.T. Trial, 9/13/23, at 38-39, 42-43 (some formatting altered).

Following our review of the record and viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we agree with the trial court that there was sufficient evidence to support Appellant's convictions for ICC in these cases. **See Felder**, 176 A.3d at 333. Appellant made two Facebook posts discussing Victim and included photos of Victim, even though her face was not visible in the photos. **See** Commonwealth's Exhibits 1, 6.

The terms of the PFA order clearly prohibit Appellant from posting remarks or images of Victim on social media networks, including Facebook. ***See*** PFA Order, 2019-FC-002133-12, 12/16/20, at 2. Appellant's wrongful intent can be imputed to him based on the circumstances of these posts which violate the plain language of the PFA order. ***See Lambert***, 147 A.3d at 1227. Therefore, Appellant is not entitled to relief on these claims.[6]

**214 MDA 2024 (CP-67-MD-1215-2022)**

Lastly, Appellant argues that the evidence was insufficient to establish that he acted with wrongful intent when he mentioned Victim in a Facebook post on April 17, 2022 because Appellant was referring to a separate PFA proceeding where he was the plaintiff and Victim was the defendant. Appellant's Brief at 17-18. Appellant contends that the Commonwealth failed to present any evidence that Appellant made this post with wrongful intent. ***Id.*** at 18.

The trial court made the following findings of fact:

The court received testimony in that matter from [Victim], as well as [Officer] Skyler Sterner of the York [County] Regional Police Department. The court finds the testimony presented by those two witnesses to be credible. This testimony related to

---

[6] To the extent that Appellant argues his convictions for these two counts of ICC violate his constitutional right to reputation, that claim is waived because Appellant did not include it in his Rule 1925(b) statements for these appeals. ***See*** Pa.R.A.P. 1925(b)(4)(vii) (stating that "[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived"); ***see also Commonwealth v. Laird***, 988 A.2d 618, 643 n.27 (Pa. 2010) (explaining that the defendant waived any constitutional claims that he failed to include in his Rule 1925(b) statement).

Commonwealth's Exhibit 7 and Exhibit 8. These, again, were postings made by [Appellant] relating to matters involving [Victim]. In fact, [Victim] is specifically referenced in Commonwealth's Exhibit 8. The court finds that the Commonwealth has met its burden of proof in this matter. [Appellant] knew that he had a protection from abuse order in place at the time. [Appellant] was aware at the time he made the post, but Defendant decided to make those posts anyway. As a result, again, the court finds the Commonwealth has met its burden of proof in regards to this matter.

N.T. Trial, 9/13/23, at 43-44 (some formatting altered).

Following our review of the record and viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we agree with the trial court that there was sufficient evidence to support Appellant's conviction for ICC in this case. *See Felder*, 176 A.3d at 333. Appellant made a Facebook post discussing the PFA order Appellant obtained against Victim. *See* Commonwealth's Exhibit 8. However, the terms of the PFA order that Victim obtained against Appellant clearly prohibit Appellant from posting remarks or images of Victim on social media networks, including Facebook. *See* PFA Order, 2019-FC-002133-12, 12/16/20, at 2. This matter is distinguishable from *Haigh* because Appellant did not contact Victim while they were both present in court for a proceeding related to either PFA order. *Cf. Haigh*, 874 A.2d at 1175-77. Appellant's wrongful intent can be imputed to him based on the circumstances of these posts which violate the plain language of the PFA order at docket number 2019-FC-002133-12. *See Lambert*, 147 A.3d at 1227. Therefore, Appellant is not entitled to relief on this claim.

For these reasons, we affirm.

Judgments of sentence affirmed. Jurisdiction relinquished.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 1/08/2025